Phillip G. BAILEY and Eldean Bailey, his Wife; Willis K. Boyd and Rebecca Boyd, his Wife; Donald A. Branham and Rebecca Branham, his Wife; Kenneth R. Bush and J. Kay Bush, his Wife; Bruce E. Carter and Karen Carter, his Wife; Luther Craig and Nancy Craig, his Wife; James D. Daniels and Beatrice Daniels, his Wife; Raymond D. Davis and Patsy Davis, his Wife; and Robert L. Dezarn and Juliane Dezarn, his Wife, Appellants,

v.

NORTH AMERICAN REFRACTORIES COMPANY, Appellee.

James O. Nichols and Mary E. Nichols, his wife; Gaines D. Stewart and Christine Stewart, his wife; Earl E. Tackett and Mary Tackett, his wife;

William M. Turman and Nancy Turman, his wife, Appellants,

v.

North American Refractories Company, Appellee.

James O. Nichols and Mary E. Nichols, his wife; Gaines D. Stewart and Christine Stewart, his wife; Earl E. Tackett and Mary Tackett, his wife, Appellants,

v.

CBS Corporation, f/k/a Westinghouse Electric Corporation, Appellee.

Nos. 2000–CA–001670–MR, 2000–CA–001671–MR, 2000–CA–002515–MR.

Court of Appeals of Kentucky.

Oct. 12, 2001.

Discretionary Review Denied by Supreme Court Feb. 12, 2003.

Case Ordered Published by Supreme Court Feb. 12, 2003.

Robert H. Miller, II, Charleston, WV, for Appellants Phillip G. Bailey and Eldean Bailey, his wife, Willis K. Boyd and Rebecca Boyd, his wife, Donald A. Branham and Rebecca Branham, his wife, Kenneth R. Bush and J. Kay Bush, his wife, Bruce E. Carter and Karen Carter, his wife, Luther Craig and Nancy Craig, his wife, James D. Daniels and Beatrice Daniels, his wife, Raymond D. Davis and Patsy Davis, his wife, and Robert L. Dezarn and Juliane Dezarn, his wife, James O. Nichols

and Mary E. Nichols, his wife, Gaines D. Stewart and Christine Stewart, his wife, Earl E. Tackett and Mary Tackett, his wife, William M. Turman and Nancy Turman, his wife.

Albert F. Grasch, Jr. and Stephen M. Schwartz, Jr., Lexington, KY, for Appellee, CBS Corporation, f/k/a Westinghouse Electric Corporation.

Wendell S. Roberts, Ashland, KY, for Appellee, North American Refractories Company.

Stephen Michael Bowers, Atlanta, GA, for Amicus Curiae Brief for Foseco, Inc.

Before JOHNSON, MILLER, and SCHRODER, Judges.

## OPINION

MILLER, Judge.

We have before us three appeals. Phillip G. Bailey, Eldean Bailey, his wife; Willis K. Boyd, Rebecca Boyd, his wife; Donald A. Branham, Rebecca Branham, his wife; Kenneth R. Bush, J. Kay Bush, his wife; Bruce E. Carter, Karen Carter, his wife; Luther Craig, Nancy Craig, his wife; James D. Daniels, Beatrice Daniels, his wife; Raymond D. Davis, Patsy Davis, his wife; Robert L. Dezarn, Juliane Dezarn, his wife; bring Appeal No. 2000–CA–001670–MR from a June 8, 2000, summary judgment of the Boyd Circuit Court.

James O. Nichols, Mary E. Nichols, his wife; Gaines D. Stewart, Christine Stewart, his wife; Earl E. Tackett, Mary Tackett, his wife; William M. Turman, and Nancy Turman, his wife; bring Appeal No. 2000–CA–001671–MR from a June 8, 2000, summary judgment of the Boyd Circuit Court.

James O. Nichols, Mary E. Nichols, his wife; Gaines D. Stewart, Christine Stewart, his wife; Earl E. Tackett, and Mary Tackett, his wife; bring Appeal No. 2000–CA–002515–MR from a September 25, 2000, summary judgment of the Boyd Circuit Court.

We reverse and remand the three Appeals. (No. 2000–CA–001670–MR, No. 2000–CA–001671–MR, and No. 2000–CA–002515–MR)

The underlying actions were all filed in the Boyd Circuit Court. Therein, it was alleged that products manufactured by either North American Refractories Company (NARCO) or Westinghouse Electric Corporation (Westinghouse) exposed employees of Armco Steel, n/k/a AK Steel, (Armco) in Ashland, Kentucky to asbestos, thus causing asbestos-related illnesses.[1] The circuit court entered summary judgments in favor of NARCO and Westinghouse, thereby dismissing the actions. These appeals follow.

Having examined the record and applicable law, we hold that summary judgment was erroneously entered in Appeals No. 2000–CA–001670–MR and No. 2000–CA–001671–MR against NARCO. We also hold that summary judgment was erroneously entered in Appeal No. 2000–CA–002515–MR against Westinghouse. To best clarify our ratiocination, we shall initially address Appeals No. 2000–CA–001670–MR and No. 2000–CA–001671–MR against NARCO and then address Appeal No. 2000–CA–002515–MR against Westinghouse.

*Appeals No. 2000–CA–001670–MR and No. 2000–CA–001671–MR* [2]

---

1. Spouses of these employees brought derivative claims.

2. These appeals are against NARCO.

Appellants[3] contend the circuit court committed error by entering summary judgments dismissing their actions against NARCO. Summary judgment is appropriate where there exists no material issue of fact and movant is entitled to judgment as a matter of law. Ky. R. Civ. P. (CR) 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). We, of course, view all facts and inferences most favorably to the non-moving party. *Ogden v. Employers Fire Insurance Company*, Ky., 503 S.W.2d 727 (1973); *Mitchell v. Jones*, Ky., 283 S.W.2d 716 (1955).

■ Appellants assert that there exist material issues of fact and that NARCO was not entitled to judgment as a matter of law. NARCO argues otherwise. Specifically, NARCO maintains that summary judgment was proper as appellants failed to prove that any NARCO asbestos product was the legal cause of appellants' illnesses.

■ In this Commonwealth, we have adopted the legal causation standard set forth in *Restatement (Second) of Torts* § 431 (1965):

§ 431. What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

See *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980). To defeat the summary judgments, appellants must demonstrate that NARCO asbestos products were a substantial factor in bringing about appellants' illnesses. We shall now review the evidence to determine if appellants presented material issues of fact as to causation.

The record indicates that Bailey worked at Armco from approximately 1968 to 1993, Boyd from approximately 1967 to present, Branham from approximately 1967 to 1998, Bush from approximately 1958 to present, Carter from approximately 1966 to present, Craig from approximately 1965 to present, Daniels from approximately 1955 to 1999, Davis from approximately 1964 to 1973, Dezarn from approximately 1957 to 1991, Nichols from approximately 1967 to 1998, Stewart from approximately 1955 to 1999, Tackett from approximately 1953 to 1993, and Turman from approximately 1952 to 1996. NARCO admitted selling the following asbestos-containing products to Armco: (1) NARCOlite Insulating Castable by orders dated November 10, 1970, and December 19, 1972, and (2) Super 505 Hot Gun "C" by order dated December 9, 1975. From the above evidence, it is uncontroverted that appellants worked at Armco when NARCO's asbestos-containing products were in use at the plant.

The deposition of one James Menshouse, who worked at Armco, illustrates how certain NARCO asbestos-containing products were utilized at the plant. Menshouse stated that he observed NARCO's gunning mix and NARCO's castable material used

**3.** For purposes of these appeals, Phillip G. Bailey, Eldean Bailey, his wife; Willis K. Boyd, Rebecca Boyd, his wife; Donald A. Branham, Rebecca Branham, his wife; Kenneth R. Bush, J. Kay Bush, his wife; Bruce E. Carter, Karen Carter, his wife; Luther Craig, Nancy Craig, his wife; James D. Daniels, Beatrice Daniels, his wife; Raymond D. Davis, Patsy Davis, his wife; Robert L. De-

zarn, Juliane Dezarn, his wife, in Appeal No. 2000–CA–001670–MR, and James O. Nichols, Mary E. Nichols, his wife; Gaines D. Stewart, Christine Stewart, his wife; Earl E. Tackett, Mary Tackett, his wife; William M. Turman, and Nancy Turman, his wife, in Appeal No. 2000–CA–001671–MR, shall be collectively referred to as "appellants".

at Armco. He identified the gunning mix and the castable material as NARCO's by the company's trademark on their respective bags. Menshouse deponed that both the gunning mix and castable material had to be mixed by workers at the plant and that dust was released as a result of the mixing process. He further deponed that the gunning material was used daily in some areas of the plant, and that the castable material was used at various locations in the plant.

We now turn to the affidavit of appellants' expert witness, Dr. Arthur L. Frank[4], which provides, in relevant part, as follows:

> 10. ... Once released into the air, asbestos fibers and silica particles often remain airborne for long periods of time and travel substantial distances from the point of their liberation. Once inhaled, asbestos fibers and silica particles tend to persist in the body.
>
> 11. I am personally familiar with the Armco Steel plant and taken in the captioned litigation.
>
> 12. ... each asbestos-containing material and silica-based refractory product installed, ... in the Armco Steel plant was a substantial contributing factor in the induction of the asbestosis, silicosis and mixed dust pneumoconiosis contracted by Armco Steel plant workers.

Dr. Frank opines that once released in the air, asbestos particles remain airborne for long periods of time and can travel substantial distances. This is referred to as the "fiber-drift" theory. He also states he is familiar with the Armco plant. Within a reasonable degree of medical certainty, Dr. Frank further opined that asbestos-containing material at Armco was a substantial contributing factor to appellants' illnesses.

In reaching his medical conclusions, Dr. Frank relied upon the fiber-drift theory. NARCO argues that Dr. Frank's expert testimony as to the fiber-drift theory is insufficient to satisfy the substantial factor test as to causation. NARCO attacks such theory as untenable. NARCO urges this Court to adopt the "frequency-regularity-proximity" causation test, which was iterated in *Lohrmann v. Pittsburgh Corning Corporation,* 782 F.2d 1156 (4th Cir.1986). This test requires that "[t]o support a reasonable inference of substantial causation, there must be evidence of exposure to specific [asbestos-containing] product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162–1163. In sum, the test requires a claimant to have been exposed while in close proximity to an asbestos product on a regular and extended basis to prove injury. We are of the opinion that to adopt either the fiber drift theory or the frequency-regularity-proximity theory as a matter of law would infringe upon the mandate of the jury to determine causation. Either theory requires a factual determination as to causation and, perforce, legal cause.

■■■ Generally, the existence of legal cause is a question of fact for the jury. It only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference. *See Huffman v. S.S. Mary & Elizabeth Hospital,* Ky. 475 S.W.2d 631 (1972). The claimant has the burden to prove legal causation; however, it is well recognized that "legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the

---

4. Dr. Arthur L. Frank is a professor of Occupational Environmental Medicine at the University of Texas Health Center at Tyler. He additionally holds a Ph.D. degree in Bio–Medical Sciences, having studied the effects of asbestos on respiratory tissue.

product was a legal cause of the harm." *Holbrook v. Rose*, Ky., 458 S.W.2d 155, 157 (1970). To find causation, the jury naturally draws inferences from circumstantial evidence. These inferences, however, must be reasonable, that is they must "indicate the *probable,* as distinguished from a *possible* cause." *Briner v. General Motors Corporation*, Ky., 461 S.W.2d 99, 101 (1970). Coupled with the facts herein, we are of the opinion that Dr. Frank's expert testimony created a sufficient "quantum of circumstantial evidence" to raise a factual issue as to legal causation.[5]

Under the circumstances of the case at hand, we believe the fiber-drift theory and the frequency-regularity-proximity test merely present two competing theories of causation. The Court cannot choose which theory to adopt; rather, as hereinbefore explained, such choice is for the jury.

In reaching this decision, we rely upon the evidence that NARCO's asbestos-containing materials were mixed at the plant which, of course, released asbestos fibers into the air. It is uncontroverted that appellants all worked at Armco during the time NARCO admitted selling asbestos products to the plant. According to Dr. Frank's theory, once released into the air these asbestos fibers could travel for long periods of time and substantial distances. Dr. Frank further opined that the asbestos-containing materials were a substantial contributing factor to appellants' diseases. As such, we are of the opinion that material issues of fact exist as to whether NARCO's asbestos products were, indeed, a substantial factor in causing appellants' alleged asbestos-related illnesses.

Thus, we hold that the circuit court committed error by entering summary judgments in favor of NARCO against appellants.

### Appeal NO. 2000–CA–002515–MR [6]

Appellants[7] contend that the circuit court committed error by entering summary judgment dismissing their actions against Westinghouse. Specifically, appellants assert that material issues of fact exist thus precluding summary judgment. Westinghouse counters that summary judgment was appropriate. It maintains the record is devoid of evidence establishing that Westinghouse products exposed appellants to asbestos or that such exposure caused appellants' alleged asbestos-related diseases.

The record indicates that Nichols worked at Armco from approximately 1967 to 1998, Stewart from approximately 1955 to 1999 and Tackett from approximately 1953 to 1993. To defeat summary judgment, appellants must demonstrate that Westinghouse asbestos products were a substantial factor in bringing about their

---

5. The insidious nature of asbestos was expounded upon by Dr. Arthur L. Frank in his affidavit:

   [F]or asbestos-induced cancer, the commonly-held *no threshold* principle, with which *I concur, asserts that no* level of exposure has been demonstrated below which no resultant disease will occur, *i.e.,* that no safe level of asbestos exposure has been documented.

   . . .

   *Persons not occupationally exposed to* asbestos have been shown to have been developed asbestos-induced disease. Such persons include family members of asbestos exposed workers, residents of neighbors in the vicinity of asbestos produce manufacturing plants and mines, and other non-occupationally exposed individuals.

6. This appeal is against Westinghouse.

7. For purposes of this appeal, James O. Nichols, Mary E. Nichols, his wife, Gaines D. Stewart, Christine Stewart, his wife; Earl E. Tackett, and Mary Tackett, his wife shall be collectively referred to as "appellants".

illnesses. We shall review the record to determine if appellants presented material issues of fact as to causation.

We view the depositions of Clarence Edward Gray, Jr., as pivotal to the disposition of this appeal. Gray worked at Armco from 1957 to 1997. For most of the time, Gray worked in the electrical shop on direct current (DC) motors. Gray testified that he mainly worked with General Electric or Westinghouse motors. Specifically, he stated:

I mainly worked on DC equipment and it was Westinghouse and General Electric. And when I first went there, everything had asbestos in it.[8]

Gray also identified the asbestos components in the "early motors":

Our motors, when we opened them up, the early motors were all insulated with asbestos tape, cloth, and some of the early wedges that we drove through the lamination to hold the coils down were asbestos, we didn't know it at that time, but they were asbestos impregnated, micarda (phonetic) like stuff. I don't know whether that is the brand name, I don't remember brand names too well.

The brush holder insulators were asbestos, the early ones, they went to a different composite material later. Some of these motors were back, when we got them, had been out there for years and years, and I started ¶ 58, ¶ 59 in the shop, ¶ 58 in the mill, but some of them were really old motors. And the pads underneath the field coils were insulated to keep the coil from touching the metal frame, they were pure asbestos then. The leads, the lead wires coming into the motor, were insulated with asbestos, white asbestos material.

Some of the bearing shells on particular motors, not all of them, the bearing shells had a gasket in between them and they were an asbestos material inside that, incorporated in that gasket.[9]

Gray further explained that DC motors often required "rewinding", and that in the process asbestos dust was released:

The dust was coming from when we were cleaning, preparing the bad motor to be refinished, rewound we call it, and new coils fitted in, that is when the dust appeared because we were grinding.·

See, that insulation sticks, because once you insulate everything with that asbestos tape then you dip it in varnish, and then you bake it for eight hours, at least eight hours. Then when it comes back in, it's burnt up, that varnish is gone, you have raw, shaggy insulation material, later on it would be fiberglass but the early was asbestos that is all we had. Then you would pull it all off as much as you can, and what residue was stuck then you would grind it. You want to get it back down to perfect to start over again.[10]

As of 1995, Gray testified that between 5,000 and 7,000 DC motors were in use at Armco, and that 30 to 40 percent of these motors were the early asbestos-type motors.

▮ Viewing the above testimony most favorably to appellants, we think it established that Westinghouse motors were in use at Armco as early as 1959, that Westinghouse motors contained asbestos components, and that while "rewinding" the early motors, asbestos insulation was "ground" or otherwise disturbed, thereby releasing asbestos into the air. For purposes of summary judgment, we think it a

---

**8.** Clarence Edward Gray, Jr., March 27, 1995 Deposition, p. 71.

**9.** Gray, March 1, 2000 Deposition, pp. 21–22.

**10.** Gray, March 1, 2000 Deposition, p. 37.

permissible inference that at least some of the early rewound motors were Westinghouse. We, thus, believe a material issue of fact exists upon whether asbestos was released into the air from Westinghouse products. Our inquiry, however, cannot end here. We must now determine whether appellants presented sufficient proof that asbestos fibers released from Westinghouse products were the legal cause of their illnesses.

Appellants rely upon Dr. Frank's fiber-drift theory to create a material issue of fact as to causation. We examined Dr. Frank's fiber-drift theory in Appeals No. 2000–CA–001670–MR and 2000–CA–001671–MR. We concluded that the theory coupled with the facts in those appeals was sufficient to create a material issue of fact upon causation. We likewise conclude that the theory coupled with the facts of this appeal create a material issue of fact upon causation.

In reaching this decision, we rely upon evidence that some of the "early motors" were Westinghouse, and that these motors contained asbestos. Also, there was testimony that the early motors were "rewound" at the plant thereby releasing asbestos insulation into the air. For purposes of summary judgment, a permissible inference is that Westinghouse motors were also rewound, thus releasing asbestos into the air. It is uncontroverted that appellants all worked at Armco during the period that Westinghouse motors were in use. According to Dr. Frank's fiber-drift theory, once released into the air these asbestos fibers could travel for long periods of time and substantial distances. Dr. Frank further opined that asbestos-containing materials were a substantial factor in appellants' diseases. Taken together, we think material issues of fact exist as to causation; thus, we hold that the circuit court erred

by entering summary judgment in favor of Westinghouse.

For the foregoing reasons, the summary judgments of the Boyd Circuit Court are reversed and these actions are remanded for proceedings consistent with this opinion.

ALL CONCUR.