RENDERED: APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0363-MR


ADAM HALE, AS NEXT FRIEND OF
BRAYDEN HALE                                              APPELLANT



                    APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE PAMELA R. GOODWINE, JUDGE
                         ACTION NO. 16-CI-00356



O'CHARLEY'S RESTAURANT PROPERTIES, LLC                    APPELLEE


AND                    NO. 2018-CA-0367-MR


O'CHARLEY'S RESTAURANT PROPERTIES, LLC     CROSS-APPELLANT



               CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE PAMELA R. GOODWINE, JUDGE
                         ACTION NO. 16-CI-00356



JESSICA HALE                                          CROSS-APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; JONES AND L. THOMPSON, JUDGES.

JONES, JUDGE:  Appellant, Adam Hale, as next friend of Brayden Hale, (hereinafter referred to as "the Hales"), brings this appeal from an order of the Fayette Circuit Court granting summary judgment in favor of O'Charley's Restaurant Properties, LLC ("O'Charley's").  Following a review of the record and applicable law, we affirm.[1]

## I. BACKGROUND

On August 3, 2015, Adam Hale, his wife, Jessica, and their five-year-old-son, Brayden, had lunch together at an O'Charley's restaurant in Lexington, Kentucky.  After the family finished eating, Brayden accompanied Jessica to the women's restroom.  When the two were finished inside the restroom, Jessica pulled the door towards her and walked out.  Brayden followed behind his mother.  As the door closed, Jessica had her back to both the door and Brayden.  Once the door closed, Jessica heard her son scream and turned around.  Jessica saw Brayden standing outside the restroom door, holding his left hand, which was bleeding

---

[1] Because we have determined that the circuit court properly granted summary judgment to O'Charley's, it is not necessary for us to consider O'Charley's cross-appeal.

profusely.  Adam, who was seated at the table, heard his son scream and went to see what was wrong.  Adam also observed his son standing outside of the women's restroom door with a bloodied left hand.  A small part of Brayden's left ring fingertip had been severed by the door.  The severed fingertip was located above the middle hinge of the door.[2]  Brayden was never able to clearly articulate to his parents how his finger came to be trapped in the door, and neither Adam, Jessica, nor anyone else inside the restaurant saw the accident happen.

Brayden was transported to a local hospital where he received medical care.  Medical personnel attempted to reattach Brayden's fingertip; ultimately, however, the reattachment process was not a success.  Eventually, Brayden had surgery to place a small skin graft over the location where the fingertip was severed.  Dr. Michael Lynch testified that Brayden had a partial amputation with about a centimeter or a centimeter and a half of the pad side of Brayden's left ring finger being cut off.  The severed portion consisted of skin and tissue; it did not include the joint, bone, or the fingernail.

On February 1, 2016, acting on Brayden's behalf, the Hales filed suit against O'Charley's in Fayette Circuit Court.  The action was premised on various

---

[2] Specifically, Adam testified in his deposition that when he went to investigate why his son screamed out, he saw the tip of Brayden's finger in the hinge side of the door exterior, more than halfway up the door and above the middle hinge.

theories of liability, including *res ipsa loquitur* and common law negligence.[3]  As the case progressed, the Hales identified O'Charley's negligence as installing a door mechanism that closed too fast.  According to the Hales, the door closure at issue was defective because it allowed the door to shut in 3.174 seconds instead of five to seven seconds.  Prior to trial, after a period of discovery, O'Charley's filed a motion for summary judgment asserting that the Hales had failed to come forward with facts necessary to prove that the speed of the door closing mechanism actually caused Brayden's injury.  O'Charley's pointed out that while the Hales's expert, David Johnson, opined that the door closed too quickly, he could not say that a slower closing door would have prevented the injury.[4]  Mr. Johnson admitted during his deposition that he did not know how Brayden's finger came to be caught in the door hinge in the first instance or whether Brayden was more than three seconds behind his mother.  All Mr. Johnson could say is that the door closure speed was not compliant with standards established by the Americans with Disabilities Act, ("ADA"), as adopted by Kentucky in KRS[5] 198B.260(2).  After briefing and a hearing, the circuit court entered an order granting summary judgment in favor of O'Charley's.

---

[3] The Hales have abandoned their claim of negligence *per se*, which was premised on an alleged violation of the Americans with Disabilities Act.

[4] Mr. Johnson was identified as a certified safety professional.

[5] Kentucky Revised Statutes.

This appeal followed.

## II. STANDARD OF REVIEW

"[S]ummary judgment is to be cautiously applied and should not be used as a substitute for trial" unless "there is no legitimate claim under the law and it would be impossible to assert one given the facts." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 916 (Ky. 2013), *as corrected* (Nov. 25, 2013). A motion for summary judgment should be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor" even when the evidence is viewed in the light most favorable to him. *Steelvest*, 807 S.W.2d at 482; *Shelton*, 413 S.W.3d at 905. To survive a properly supported summary judgment motion, the opposing party must have presented "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482; *see also Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968) ("When the moving party has presented evidence showing that . . . there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact.").

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR[6] 56.03). Because there are no factual findings at issue, the appellate court may review that trial court's decision *de novo*. *Shelton*, 413 S.W.3d at 905.

## III. ANALYSIS

### A. *Res Ipsa Loquitur*

*Res ipsa loquitur* is a Latin term which means "[t]he thing speaks for itself." DAVID J. LEIBSON, 13 KY. PRAC. TORT LAW § 10:23 (2018 ed.). It is an evidentiary doctrine which allows the inference of negligence on the part of the defendant and, if forceful enough, creates a rebuttable presumption of negligence. *Sadr v. Hager Beauty Sch., Inc.,* 723 S.W.2d 886, 887 (Ky. App. 1987).

> [R]eliance upon the doctrine of *res ipsa loquitur* is predicated upon a showing that (1) the defendant had full control of the instrumentality which caused the injury; (2) the accident could not have happened if those having control had not been negligent; and (3) the plaintiff's injury resulted from the accident.

---

[6] Kentucky Rules of Civil Procedure.

*Id.* (citations omitted).  However, even if all three elements are met, a claim premised on *res ipsa loquitur* may be overcome if there is a showing that the injury was caused by the plaintiff's own voluntary action.  *Id.*

There is no question that Brayden suffered an injury due to his finger becoming lodged in the closed door and neither party asserts that an injury did not result from the accident.  Therefore, we will not address the third element of *res ipsa loquitur* as it is not contested.  The issues raised by the parties on appeal relate to the first and second prongs of *res ipsa loquitur*.  We will address each in turn.

Foremost, *res ipsa loquitur* requires a showing that the defendant had full control of the instrument that caused the injury.  The Hales argue this element is met because O'Charley's had exclusive control over the door and the door stopping mechanism in their restaurant.  The fact that O'Charley's installed the door and stopping mechanisms in its restaurant, however, does not mean at the time of injury the door was in O'Charley's exclusive control.  This case is analogous to *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790 (Ky. App. 2012).  The appellant in *Ryan* was pumping gas at a Fast Lane station.  She alleged that the gas pump continued to dispense gas even when no pressure was being applied causing gas to spray in her eye.  Like the Hales, the appellant in *Ryan* argued that the trial court erred in granting summary judgment because it did not apply the *res ipsa loquitur* doctrine.  We disagreed that the doctrine was applicable even though the

gas station installed the pump. We explained that the doctrine could not apply because the appellant was actively in control of the pump at the time of her injury. *Id*.

We recognize that there is a difference between passive use and active control. A patron's passive use of an item does not relinquish the defendant's absolute control. *See J.C. Penney Co. v. Livingston*, 271 S.W.2d 906, 907-08 (Ky. 1954) (holding that an escalator was under the control of the defendant when a small child riding the elevator with his sister got his hand lodged between the escalator's step). Rather, exclusive control is lost when an item is actively being operated by the patron. *See Ryan*, 350 S.W.3d at 790. When Jessica physically took over operation of the door, *i.e.*, opening and closing the door, O'Charley's no longer retained exclusive control. At the point Jessica began her operation of the door, she was in control of the door's basic operation, while O'Charley's only retained control of the door's initial installation and repair, if necessary. Absent exclusive control, the first element required under *res ipsa loquitur* is not met.

Second, a finding under *res ipsa loquitur* requires evidence that the injury could not have happened if the party in control was not negligent. *Res ipsa loquitur* applies only where the thing shown speaks of negligence of the defendant and not merely the occurrence of an accident. *Helton v. Forest Park Baptist Church*, 589 S.W.2d 217, 219 (Ky. App. 1979). The doctrine does not apply

-8-

where the existence of the negligent acts is not more reasonably probable and where the proof of occurrence, without more, leaves the matter resting only to conjecture. *Schroerlucke v. McDaniel Funeral Home, Inc.*, 291 S.W.2d 6 (Ky. 1956).

The Hales rely on the opinion of their safety expert, Mr. Johnson, that the door closed too quickly. While this may be this case, no proof was offered that the accident was actually caused by the speed of the door. This is not a case where Brayden was hit on the back by the door, where the door knocked him down to the ground as he was still in the process of exiting it, or even where his finger was caught between the wall and the outside facing of the door. Brayden's fingertip was located in the hinge of the door. And, no one could explain how his finger came to be in that location. Even Mr. Johnson could not explain how Brayden's finger came to be that location or even if a slower closing door would have prevented the accident. It is just as likely that the accident would have still occurred even if the door had been a slower closing one. As such, we agree with the circuit court that *res ipsa loquitur* is not applicable in this case. *See Harris v. Thompson*, 497 S.W.2d 422, 431 (Ky. 1973); *Savill v. Hodges*, 460 S.W.2d 828, 829 (Ky. 1970).[7]

---

[7] While we have not located any Kentucky authority factually on point, other jurisdictions have rejected the application of *res ipsa loquitur* in factually analogous cases. *See Dillon K. v. Northern Blvd. 4818, LLC*, 77 N.Y.S.3d 69, 70 (N.Y. App. Div. 2018) ("Plaintiffs failed to raise

### B. Common Law Negligence

In Kentucky, a claim under common law negligence must satisfy the following elements: (1) a duty was owed to the plaintiff by the defendant; (2) the duty was breached; (3) there was a resulting injury to the plaintiff; (4) legal causation exists between the defendant's breach and the plaintiff's injury; and (5) damages. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). If any one element fails, then, as a matter of law, the claim in its entirety must also fail. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).

The parties' arguments to us concern whether summary judgment was properly granted with respect to causation. "Causation consists of two distinct components: 'but-for' causation, also referred to as causation in fact, and proximate causation." *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). "But-for causation requires the existence of a direct, distinct, and identifiable nexus

---

an issue of fact. Plaintiffs' argument that the doctrine of *res ipsa loquitur* applies to this case is unpersuasive, since [their] version of the incident does not rule out the possibility that the injury [infant's finger being smashed in parking garage door] was caused by infant plaintiff's own voluntary actions[.]'"); *Massey on Behalf of Massey v. Schwegmann Giant Super Markets, Inc.*, 557 So. 2d 280, 283 (La. Ct. App. 1990) ("A conclusion could reasonably be drawn that the plaintiff's injured finger was due to his own actions in opening the freezer door and allowing it to close on his finger . . . this is not a proper case for the application of the doctrine of *res ipsa loquitur*."); *Harvey v. Racetrac Petroleum, Inc.*, No. 3:07-CV-1828-D, 2009 WL 577605, at *2, n.4 (N.D. Tex. Mar. 6, 2009) ("Here, the character of the accident (a child getting his finger caught in a closing door) is the type of accident that could ordinarily occur in the absence of negligence on the part of the door owner. Moreover, at the time of the accident, the allegedly defective door was at least partly, if not entirely, under the control of Demetrice."); *Parker v. Felcor Lodging Tr., Inc.*, No. 1:08-CV-3644-RWS, 2010 WL 3717308, at *1 (N.D. Ga. Sept. 14, 2010) (holding *res ipsa loquitur* did not apply against hotel where fingertip severed by door was found on the room side of the door where the hinges connected to the door to the frame).

between the defendant's breach of duty (negligence) and the plaintiff's damages such that the event would not have occurred 'but for' the defendant's negligent or wrongful conduct in breach of a duty." *Id.* "Proximate causation captures the notion that, although conduct in breach of an established duty may be an actual but-for cause of the plaintiffs damages, it is nevertheless too attenuated from the damages in time, place, or foreseeability to reasonably impose liability upon the defendant." *Id.* at 731.

The Hales contend that there is an issue of material fact as to the cause of Brayden's injury. In support of this theory, the Hales cite to *Bailey v. North American Refractories Company*, where this Court held that there is an issue of material fact when competing expert testimony has been produced providing two theories of causation. 95 S.W.3d 868, 873 (Ky. App. 2001). In such an instance, we agree, the question of causation becomes a question of fact, best left for the jury. The problem in this case, however, is not a disagreement between experts or even fact witnesses regarding how the injury occurred. The record is devoid of any evidence regarding how the accident occurred. Mr. Johnson, the Hales's expert, opined that the door closed too quickly. However, he admitted that he could not say whether a slower closing door would have prevented the accident because he did not know how Brayden's finger came to be located in the door hinge.

-11-

In the ordinary use of a door, a person does not need to place his fingers near the hinge side of the door. Additionally, even had the door taken longer to close, the pinch point would have happened much quicker and with much greater force on the hinge side than on the latch side of the door, making it likely the injury still would have occurred. Therefore, it is reasonable to conclude the door's closing speed was not the legal cause of Brayden's injury. Absent legal cause, there is no actionable claim for negligence. As such, the circuit court did not err in granting summary judgment in favor of O'Charley's.[8]

Our conclusion that the circuit court properly granted summary judgment in favor of O'Charley's renders any remaining issues, including those raised by the cross-appeal, moot.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Fayette Circuit Court.

ALL CONCUR.

---

[8] *See Ray v. GPR Hosp., LLC*, No. 1:14-CV-1309-CC, 2015 WL 12683828, at *5 (N.D. Ga. Sept. 30, 2015) ("In this case, assuming arguendo that Defendant had actual or constructive notice that the door in question was closing too quickly and required an adjustment, the defective condition of the door was not the proximate cause of Charles Ray's injury."); *Beman v. Kmart Corp.*, 501 S.E.2d 580, 582 (Ga. Ct. App. 1998).

BRIEFS FOR APPELLANT ADAM HALE:

Justin S. Peterson
Laraclay Parker
Lexington, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT O'CHARLEY'S RESTAURANT PROPERTIES, LLC:

Susan L. Maines
Lexington, Kentucky

BRIEF FOR CROSS-APPELLEE JESSICA HALE:

Justin S. Peterson
Laraclay Parker
Lexington, Kentucky