RENDERED: JULY 7, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0184-MR

PAUL WILLIAMS, INDIVIDUALLY;
PAUL WILLIAMS, AS EXECUTOR
OF THE ESTATE OF VICKIE
WILLIAMS; AND COLBY
WILLIAMS, BY AND THROUGH HIS
PARENT, GUARDIAN, AND NEXT
FRIEND, PAUL WILLIAMS                                          APPELLANTS


|  | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE KIMBERLY N. BUNNELL, JUDGE |
|  | ACTION NO. 16-CI-01842 |


SCHNEIDER ELECTRIC USA, INC.,
F/K/A SQUARE D; AND UNION
CARBIDE CORPORATION                                          APPELLEES


AND                          NO. 2022-CA-0190-MR


SCHNEIDER ELECTRIC USA, INC.,
F/K/A SQUARE D                                          CROSS-APPELLANT


|  | CROSS-APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE KIMBERLY N. BUNNELL, JUDGE |
|  | ACTION NO. 16-CI-01842 |

PAUL WILLIAMS, INDIVIDUALLY;
PAUL WILLIAMS, AS EXECUTOR
OF THE ESTATE OF VICKIE
WILLIAMS; AND COLBY
WILLIAMS, BY AND THROUGH HIS
PARENT, GUARDIAN, AND NEXT
FRIEND, PAUL WILLIAMS                                  CROSS-APPELLEES


OPINION
REVERSING IN PART, VACATING IN PART, AFFIRMING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE:  Paul Williams, his child, and his late wife Vickie's estate, (collectively "Williamses") appeal from the Fayette Circuit Court's orders granting summary judgment to the appellees, Schneider Electric USA, Inc. ("Square D") and Union Carbide Corporation ("Union Carbide") on the basis that they owed no duty to Vickie, who died from mesothelioma in 2017.  The Williamses also appeal from the trial court's order excluding certain expert opinions because they were revealed during a deposition and not produced as part of the Williamses' initial expert disclosures.  In its related cross-appeal, Square D argues the trial court wrongly concluded that the Williamses' claims were not barred by the Kentucky Workers' Compensation Act.

-2-

After due consideration, we: (1) reverse the trial court's orders granting summary judgment to Square D and Union Carbide; (2) vacate the trial court's order excluding the expert's opinions because the trial court did not consider whether Union Carbide and/or Square D were prejudiced by the allegedly improper disclosure of the opinions; and (3) affirm the trial court's denial of Square D's motion to dismiss the Williamses' claims against it as being barred by the exclusivity provision of the Workers' Compensation Act.

## I. BACKGROUND

Vickie's father, Ken Baxter, worked for Square D for many years beginning in the late 1960s until approximately 2003. Square D manufactured plastic electrical parts from molding compounds. Square D purchased some of its molding compounds from Union Carbide, and until around 1974, Union Carbide's molding compounds contained asbestos fibers.

The Williamses adopted Vickie in 1967, when she was approximately six years of age, and she lived with them until the mid-1980s. Vickie testified that she frequently encountered her father's dusty work clothes as she generally hugged him each day when he came home and assisted in laundering the clothing. As a teenager, Vickie worked for Square D for a few months in 1978.

Vickie was diagnosed with mesothelioma in 2016 at the age of fifty-four and died from the disease approximately a year later. Prior to her death,

Vickie filed suit in Fayette Circuit Court against Square D and Union Carbide claiming that she was exposed to asbestos from her father's contaminated work clothes and directly during her brief employment at Square D in 1978.[1]  Vickie's claims against Square D were grounded in general negligence, and her claims against Union Carbide were grounded in negligence and products liability.  After Vickie's death, Vickie's personal representative/executor was substituted in her place, and her husband, Paul, and her son, Colby, added claims for loss of consortium.

The Williamses' claims were originally assigned to Judge James Ishmael.  The parties engaged in extensive discovery for most of 2016 and 2017.  Ultimately, Square D moved the trial court for summary judgment, arguing that it did not owe a duty to Vickie and that Vickie's claims were barred by the exclusivity provision of the Workers' Compensation Act.  By the time the summary judgment motion was heard by the trial court, Judge Ishmael had retired from the bench and the case had been reassigned to Judge John E. Reynolds.

Judge Reynolds's order, dated May 10, 2018, considered Square D's argument regarding workers' compensation exclusivity and found that the Williamses had presented evidence of many years of asbestos exposure which had

---

[1]  Vickie's complaint was unverified, and during discovery all the medical and expert proof attributed her mesothelioma to household exposure to asbestos from her father's work clothing and not from her brief summer job at Square D in 1978.

no connection to Vickie's three-month term of employment at Square D as a teenager in 1978. The trial court also found it significant that both the Williamses' experts and the defense experts all agreed that no portion of Vickie's injury was caused by her work at Square D.

Next, Judge Reynolds disagreed with Square D's argument that it owed no duty to Vickie. The order pointed out that, pursuant to Kentucky law, Square D owed Vickie a duty to prevent foreseeable harm. According to Judge Reynolds, the Williamses set forth evidence demonstrating that Square D either knew or should have known that take-home exposure to asbestos placed household members of its employees at risk of contracting disease. Citing the foreseeability of the harm, Judge Reynolds denied Square D's motion for summary judgment on this ground as well.

Square D filed an interlocutory appeal based on its workers' compensation argument and pursuant to *Ervin Cable Construction, LLC v. Lay*, 461 S.W.3d 422, 423 (Ky. App. 2015) (holding "the denial of a substantial claim of immunity is an exception to the finality rule that interlocutory orders are not immediately appealable"). We affirmed the trial court's order denying summary judgment. *Schneider Electric USA, Inc. v. Williams*, No. 2018-CA-000866-MR, 2019 WL 3763537 (Ky. App. Aug. 9, 2019) (*Williams I*). The Kentucky Supreme Court granted discretionary review and vacated the decision, as the Court had

overruled *Ervin Cable* in *Sheets v. Ford Motor Company*, 626 S.W.3d 594 (Ky. 2021).[2]  We were then ordered to reconsider the appeal in light of *Sheets*. Accordingly, we dismissed Square D's appeal as interlocutory and remanded the matter to the trial court.  *Schneider Electric USA, Inc. v. Williams*, No. 2018-CA-0866-MR, 2021 WL 4805064 (Ky. App. Oct. 15, 2021) (*Williams II*).

Meanwhile, the judicial landscape in Fayette Circuit Court had shifted yet again.  On August 19, 2020, with Judge Kimberly Bunnell at the helm, the trial court took up Union Carbide's motion for summary judgment and granted it, concluding that Union Carbide owed no duty to Vickie, as she was a "bystander of a bystander" and there was no foreseeable risk of harm to her during the relevant time frame.[3]  The trial court explained:

> [Union Carbide's] duty as a product manufacturer did not extend to secondary exposures to asbestos that [Vickie] may have experienced as a result of her contact with [her father] or the environment he occupied after leaving the premises owned and operated by [Union Carbide's] customer, Square D.  To hold otherwise would create an unlimited duty for product manufacturers to warn and/or protect every person in the world from potential risks occurring on the premises of its customers, including

---

[2] In *Sheets*, the Court held that an interlocutory order denying immunity based on workers' compensation exclusivity was not immediately appealable because the interests at stake were "purely personal" and did not "involve a substantial public interest that would be imperiled absent an immediate appeal."  *Id.* at 599-600.

[3] Union Carbide had moved for summary judgment around the same time as Square D but for reasons that are not entirely clear, Union Carbide's motion for summary judgment had not been addressed at the same time as Square D's motion, leaving the motion pending when Judge Bunnell took over the case.

those who may encounter employees of others after leaving the work place. Kentucky law does not permit such a result. This Court further finds there is no evidence of record that there was a foreseeable known risk to a bystander of a bystander, such as [Vickie] during the relevant time frame. As such, there are no genuine issues of material fact for a jury to consider on the essential element of duty.

(Aug. 25, 2020 Trial Court Order at 7-8.)

Judge Bunnell's decision to grant summary judgment to Union Carbide based on a lack of duty was directly at odds with Judge Reynolds's prior order denying summary judgment to Square D. Accordingly, after Square D's portion of the case was remanded to the trial court, it promptly renewed its motion. On January 28, 2022, the trial court granted summary judgment to Square D on the same grounds as that of Union Carbide, explicitly incorporating its reasoning from its prior summary judgment order.

This appeal by the Williamses followed. Before us, the Williamses challenge both summary judgment orders as well as a prior order prohibiting them from relying on certain expert opinions on the basis that the opinions were not properly disclosed. Square D cross-appeals the trial court's order denying its motion to dismiss based on workers' compensation exclusivity.

## II. THE TRIAL COURT'S SUMMARY JUDGMENT ORDERS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the

-7-

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022).

"The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor." *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010). "Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstances." *Isaacs v. Sentinel Insurance Company Limited*, 607 S.W.3d 678, 681 (Ky. 2020).

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). The standard of review for an appellate court is *de novo* because only legal issues are involved. *Isaacs*, 607 S.W.3d at 681.

---

[4] Kentucky Rules of Civil Procedure.

In granting summary judgment to Union Carbide and Square D, the trial court characterized Vickie as a "bystander of a bystander." While the trial court did not explain exactly what it meant by this descriptor, it appears to flow from the nature of the work Vickie's father performed at Square D during the time Vickie lived in the family residence. There is no question that Vickie's father worked at Square D and that Square D used asbestos-containing molding compounds manufactured by Union Carbide during the relevant time period. However, the amount of time Vickie's father spent in the molding room where the asbestos-containing molding compounds were used is a point of great contention. Square D and Union Carbide assert that Vickie's father was a white-collar worker who spent most of his time in an office. While the Williamses acknowledge that Vickie's father was an engineer during the relevant time period, they point to testimony from his coworkers that he took a very hands-on approach to his work and that he was frequently in the molding room even though his official workstation was in an office. According to these employees, anyone working in or walking near the molding department was exposed to dust from asbestos-containing molding compounds.

Having reviewed the factual record, we must conclude the trial court erred to the extent it characterized Vickie's father as a mere bystander.[5] At best, the evidence was disputed on this point. Where the evidence is disputed, for the purposes of summary judgment, the court must accept the version of facts most favorable to the nonmoving party. Here, that means accepting the Williamses' evidence that Vickie's father was frequently and regularly exposed to asbestos-containing dust while working at Square D.

Moreover, Kentucky law is clear that duty is not predicated on classifications such as "bystander or nonconsumer or nonuser." *Jones v. Hutchinson Mfg., Inc.*, 502 S.W.2d 66, 69-70 (Ky. 1973). Duty is measured in terms of foreseeability. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). A duty of reasonable care is owed to those people one can reasonably anticipate may be harmed by one's activities or products. "Foreseeable risks are determined in part on what the defendant knew [or should have known] at the time of the alleged negligence." *Id.* at 90.

---

[5] In direct asbestos exposure cases, Kentucky has refused to adopt the "frequency-regularity-proximity" test or any other threshold test. *Bailey v. North American Refractories Co.*, 95 S.W.3d 868, 872 (Ky. App. 2001). Adoption of such thresholds "as a matter of law would infringe upon the mandate of the jury to determine causation." *Id.* Rather, Kentucky simply requires that the plaintiff and the defendants' asbestos-containing products were in the same place at that same time and that plaintiff inhaled asbestos fibers which inhalation was a substantial factor in causing plaintiff's disease. We cannot appreciate why a different test is needed for household exposure cases.

The trial court explicitly and summarily stated in its orders that "there is no evidence of record that there was a foreseeable known risk to a bystander of a bystander" such as Williams. As already discussed, it was error to characterize Vickie as a mere bystander of a bystander. Rather, viewing the evidence in a light most favorable to the Williamses, the essential question, then, in establishing whether the appellees owed a duty to Vickie is whether by the late 1960s and into the early 1970s, the appellees could reasonably foresee the danger to household members of workers carrying asbestos dust home.[6]

Based on the evidence in the record, we hold that the danger arising from take-home asbestos dust was reasonably foreseeable by the late 1960s. Medical experts in Kentucky have identified asbestos dust as a hazard to workers since at least 1963. *Bethlehem Mines Corp. v. Davis*, 368 S.W.2d 176, 178 (Ky. 1963). In addition, the Williamses have attached numerous exhibits to the record, of which one of the most striking is an affidavit by Victor Roggli, MD, outlining the dangers of take-home asbestos exposure. (Record (R.) at 17706 *et seq.*) Dr. Roggli opined that "[i]t has been known since the 1930s that inhaling dust containing asbestos fibers could lead to disabling and even fatal lung disease." (R.

---

[6] This is not to say that the regularity (or lack thereof) of Vickie's father's exposure to asbestos-containing dust is totally irrelevant. It is certainly a proper consideration for the jury in determining causation.

at 17708.)  To limit exposure to occupational diseases, Dr. Roggli points to a work

by W.H. Tolman and L.B. Kendall, which was published in 1913:

> The importance of wearing suitable clothing on the premises should be strongly impressed upon workers in dangerous trades.  The ordinary or street-clothes should be taken off and replaced by special suits to be worn during working hours.  It is not sufficient for a working-suit, jacket or apron to be put on *over* the ordinary clothing.  The working-suit should be taken off before the midday meal and before leaving the factory and exchanged for street clothes. . . . *By removing the working-clothes before meals and before leaving the factory, the poison is not carried into lunchrooms or into the homes of workers.*

(R. at 17708) (second emphasis added) (quoting TOLMAN, W.H. AND KENDALL,

L.B., SAFETY, METHODS FOR PREVENTING OCCUPATIONAL AND OTHER ACCIDENTS

AND DISEASE (Harper and Brothers Publishers, New York & London) (1913), at

248-49.)  This evidence is further buttressed by one of Williams's other exhibits:

an Occupational Safety and Health Administration (OSHA) bulletin entitled

"Asbestos:  Airborne Danger."  (R. at 17747.)  The 1972 OSHA guidelines

established requirements for safe laundering of clothing exposed to asbestos

products, as well as specific measures employers must take to limit employees'

transport of asbestos dust on their work clothing outside of the workplace.  While it

is debatable exactly how early appellees should have known of the danger posed to

household members, it is clear to us that the danger was well known and generally

accepted by the late 1960s and into the early 1970s when the alleged exposure took place in this case.

On a motion for summary judgment, the trial court is required to view the evidence as most favorable to the non-moving party and with all doubts resolved in his or her favor. *Steelvest*, 807 S.W.2d at 480. It is apparent that the trial court erred in this case when it failed to view the evidence in a light most favorable to the Williamses. The trial court's position was that denying the existence of a duty in this case was somehow a matter of promoting public policy. However, at least as related to Union Carbide, the manufacturer of the asbestos-containing compounds, Kentucky products liability law imposes strict liability as a matter of policy. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010). Products liability in Kentucky is strict liability, and "[o]nce strict liability is accepted, bystander recovery is fait accompli." *Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc.*, 528 S.W.2d 703, 705 (Ky. 1975). The *Embs* Court goes on to explain how allowing recovery for bystanders is necessarily a matter of public policy:

> Our expressed public policy will be furthered if we minimize the risk of personal injury and property damage by charging the costs of injuries against the manufacturer who can procure liability insurance and distribute its expense among the public as a cost of doing business; and since the risk of harm from defective products exists for mere bystanders and passersby as well as for the

-13-

> purchaser or user, there is no substantial reason for
> protecting one class of persons and not the other.

*Id.*

Square D was not the manufacturer of the asbestos-containing compounds; therefore, the policy considerations as to its duty are more nuanced. However, even here, we are not talking about an unbounded duty as the trial court implied. The duty we are dealing with in this case is harm to household members of workers, not the general public. To this end, we find the Tennessee Supreme Court's analysis of the public policy issues in *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008), persuasive and adopt it as our own. We are not dealing with random, sporadic, or isolated instances of contact with asbestos-laden clothing. The duty we recognize is to today is to household members who regularly and repeatedly came into close contact with an employee's asbestos-contaminated work clothes over an extended period. Considering the potential harm, development of a deadly form of lung cancer, we believe public policy favors such a duty to this discrete group.

Given the amount of evidence in the record, it is impossible to agree with the trial court that there was no foreseeable risk to the household members of asbestos workers. Likewise, the trial court's public policy arguments run counter to Kentucky products liability law and general negligence principles. Because the trial granted summary judgment entirely grounded on the erroneous conclusion

-14-

that Vickie was owed no duty, we vacate the summary judgments favoring Square D and Union Carbide.

### III. EXCLUSION OF EXPERT OPINIONS

Next, the Williamses argue the trial court erroneously excluded certain opinions from their expert witness, Dr. David Egilman. In his disclosure pursuant to CR 26.02(4), Dr. Egilman explicitly stated he would opine that Union Carbide's asbestos-containing products caused Vickie's disease. During his three-day deposition, in which Union Carbide claimed it had removed asbestos from its products, Dr. Egilman contradicted the assertion by pointing out that talc, used to replace asbestos, was itself contaminated with asbestos. Dr. Egilman's disclosure materials supporting the talc claim were not presented to Union Carbide until the night before the final day of Dr. Egilman's deposition testimony. Union Carbide asserted that this was a deliberate measure intended to prevent its review of the material in order to counter Dr. Egilman's testimony. The trial court subsequently excluded Dr. Egilman's talc opinions on the basis that they were not timely disclosed pursuant to the discovery order.

"[Q]uestions concerning the scope of evidence are left to the discretion of the trial court to determine whether to admit and exclude evidence." *Oliphant v. Ries*, 568 S.W.3d 336, 342 (Ky. 2019). We review the trial court's decision to limit expert testimony for abuse of discretion. *Id*. Critically, however,

-15-

"[d]epositions serve the same function as CR 26.02 and 26.05 – to reveal evidence, information and opinions that may be used at trial[.]" *Id*. at 345. Dr. Egilman's deposition revealed the same evidence that would be disclosed in a CR 26.02 disclosure, giving Union Carbide a chance to prepare for a fair trial. *Id*. at 345-46.

Additionally, the trial court failed to find that the allegedly late disclosure operated to Union Carbide's prejudice. Without a showing of prejudice, "there is no valid basis to exclude or limit testimony." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). Without a showing of prejudice, the trial court's decision to exclude Dr. Egilman's opinions amounts to an abuse of discretion. Because we are vacating the two summary judgments, *supra*, for further proceedings, we are obliged to reverse the trial court's order excluding Dr. Egilman's opinions. There will be ample opportunity for Union Carbide to address Dr. Egilman's opinions before trial when the matter is remanded to the trial court.

## IV. EXCLUSIVITY UNDER WORKERS' COMPENSATION ACT

Finally, we come to the matter of Square D's cross-appeal. Square D asserts that the Williamses' claims are subject to the exclusivity provision in Kentucky's Workers' Compensation Act where her original complaint alleged that her mesothelioma was caused, in part, by direct exposure to asbestos during her own employment at Square D in 1978. As a result, Square D claims that the

indivisible injury "extends to all exposures [Vickie] alleges to have received from Square D." (Reply Brief of Appellee/Cross-Appellant Square D at 1.) Square D urges us to reverse the ruling of the trial court which denied Square D's summary judgment motion on its workers' compensation argument and affirm dismissal on this separate ground.

Although our previous opinion in *Williams I* was vacated by the Kentucky Supreme Court on procedural grounds, we are nonetheless persuaded by our earlier reasoning on this substantive question. As pointed out in the opinion, while Vickie testified her work area was dusty, there was no evidence she was exposed to asbestos during her brief time at Square D. *Williams I*, 2019 WL 3763537 at *4. "To the contrary, an expert retained by Union Carbide – Dr. James Crapo – testified in a deposition that he did not find a 'likely source of significant exposure' during that employment." *Id*. Despite this, however, we approved of the trial court's suggestion that a jury could apportion work-related and non-work-related injuries, if appropriate. *Id*. at *4-5 (citing *Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 479 (Ky. 2001) for "provid[ing] a pathway for how to apportion damages in these types of cases").

Finally, our earlier decision in *Williams I* made a fundamental point about how allowing a brief summer's employment to immunize Square D against

-17-

all repercussions from other-than-workplace asbestos exposure would result in an unfair windfall for Square D:

> Allowing Square D to evade all liability for its actions/inactions regarding [Vickie's] mesothelioma simply because [Vickie] herself worked for Square D one summer forty years ago would be a perfect example of a small tail unjustly wagging a large dog. Fundamental fairness dictates that [Vickie's] estate should have an opportunity to recover for her non-work-related injuries.

*Id*. at *5. Based on these principles, we affirm the trial court's order refusing to dismiss the Williamses' claims against Square D based on workers' compensation exclusivity.

## V. CONCLUSION

For the foregoing reasons, we: (1) reverse the trial court's summary judgment orders predicated on an absence of duty owed by either Square D or Union Carbide; (2) vacate the trial court's order limiting the testimony by Dr. Egilman; (3) affirm the trial court's order denying summary judgment to Square D on workers' compensation principles; and (4) remand the matter to the trial court for further proceedings not inconsistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS/CROSS-
APPELLEES:

Kevin C. Burke
Louisville, Kentucky

Joseph D. Satterley
Paul J. Kelley
Paul J. Ivie
Louisville, Kentucky

BRIEFS AND ORAL ARGUMENT
FOR APPELLEE UNION CARBIDE
CORPORATION:

Brantley C. Rowen
Atlanta, Georgia

Craig A. Woods
Michael A. Scodro
Brett A. Legner
Chicago, Illinois

BRIEFS AND ORAL ARGUMENT
FOR APPELLEE/CROSS-
APPELLANT SCHNEIDER
ELECTRIC, USA, INC, F/K/A
SQUARE D COMPANY:

Palmer G. Vance II
Todd S. Page
Lexington, Kentucky